815 So.2d 853 (2001)
Justin Douglas HENDERSON
v.
Brian SELLERS, Yvonne Sellers and Samuel Sellers.
No. 01-0529.
Court of Appeal of Louisiana, Third Circuit.
December 5, 2001.
David M. Kaufman, Lafayette, LA, Counsel for Plaintiff/Appellant: Justin Douglas Henderson.
*854 Michael J. Breaux, E. Gregory Voorhies, Lafayette, LA, Counsel for Defendant/Appellee: Samuel Sellers.
L. Lane Roy, G. Edward Williams, Jr., Jennifer A. Wells, Preis, Kraft & Roy, Lafayette, LA, Counsel for Defendant/Appellee: Yvonne Sellers.
Thomas R. Hightower, Jr., Leslie Mahfouz Patout, Wade Kee, Lafayette, LA, Counsel for: Shelter Mutual Insurance Company.
Court composed of ULYSSES GENE THIBODEAUX, JIMMIE C. PETERS and MICHAEL G. SULLIVAN, Judges.
ULYSSES GENE THIBODEAUX, Judge.
The trial court granted the defendant's, Samuel Sellers,' motion for summary judgment on the issue of his liability for the actions of his minor child against a third party in this personal injury action. Mr. Sellers is the domiciliary parent of Brian Sellers. He and his ex-wife, Yvonne Sellers, agreed in a Joint Custody Plan that the parent with "custody" of Brian would bear responsibility for the tortious acts of Brian. Brian was in the physical custody of Ms. Sellers at the time of his tortious act. The plaintiff, Justin Douglas Henderson (Justin), appeals the trial court's judgment and dismissal of his case against Mr. Sellers.
We conclude that Mr. Sellers is not entitled to judgment as a matter of law based on the undisputed material facts. We, therefore, reverse the judgment of the trial court. While divorced parents may validly contract with each other for the allocation of responsibility for the delictual acts of their minor children, such a contract is valid as between the parties to the contract. It cannot eviscerate the rights of an injured third party.

I.

ISSUE
In determining whether the trial court erred in granting the summary judgment in favor of Mr. Sellers, we must decide the limited issue of whether divorced parents who have joint custody of a minor child can validly contract, within a joint custody implementation plan pursuant to La.R.S. 9:335, to shift responsibility for the delictual acts of their minor child to the parent who has physical custody of the child at the time the child commits the delictual acts and, if so, the effect of such a contract on a third party claimant.

II.

FACTS AND PROCEDURAL HISTORY
On August 21, 1998, Justin was involved in an altercation with the minor child of Mr. Sellers, Brian Sellers. Brian broke Justin's jaw during a fight. Yvonne Sellers (Ms. Sellers) and Mr. Sellers are Brian's divorced parents. The original divorce decree awarded Mr. and Ms. Sellers joint custody of the Sellers' four minor children and named Ms. Sellers as the domiciliary parent. In 1998, however, when Brian was almost seventeen years old, he went to live with Mr. Sellers. By consent judgment, Mr. Sellers was designated domiciliary parent of Brian. Ms. Sellers was given physical custody of Brian on the weekends that Mr. Sellers did not have physical custody of the other children. All of the provisions of the 1991 "Joint Custody Plan" remained in effect including the following paragraph:
Responsibility for the acts of the minor children shall be borne by the parent in custody at the time of the applicable act or acts. Said responsibility shall include damages occasioned by the acts of the minor children as contemplated in Louisiana Civil Code Article 2318.
*855 On the night of Brian's altercation with Justin, he was visiting with his mother, Ms. Sellers, pursuant to her visitation rights established in the Sellers' joint custody plan.
Justin filed suit on August 19, 1999, naming Brian Sellers, Yvonne Sellers and Samuel Sellers as defendants. All defendants denied liability. On March 6, 2000, Mr. Sellers' insurer, Shelter Mutual Insurance Company (Shelter), filed a "Petition of Intervention and/or Declaratory Action" asserting, among other defenses to the original petition, that there was no coverage based upon the intentional act exclusion in the insurance policy.
The defendants filed motions for summary judgment. The trial court signed a judgment granting Mr. Sellers' motion for summary judgment and dismissed with prejudice Justin's case against Mr. Sellers. This appeal followed.

III.

LAW AND DISCUSSION

Summary Judgment
In Louisiana, summary judgment is now favored, and it shall be used to secure the just, speedy, and inexpensive determination of all actions, except those specifically excluded in La.Code Civ.P. art. 969. La.Code Civ.P. art. 966(A)(2). A summary judgment shall be rendered if the pleadings, depositions, interrogatory responses, and admissions, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Appellate courts review summary judgments de novo, applying the same criteria as the trial court to determine whether summary judgment is appropriate. Schroeder v. Board of Sup'rs of La. State Univ., 591 So.2d 342 (La. 1991).

Whether There Exist Factual Disputes Sufficient to Defeat Motion for Summary Judgment
In this case, the trial judge provided the following oral reasons for granting Mr. Sellers' motion for summary judgment:
[H]istorically, the father was always responsible for the torts of the child because it was judged that he was the appropriate disciplinarian for the child's acts, therefore, he was responsible.... Much later there was a law that was passed that stated that the joint custody was presumed to be in the best interest of the children. In the Louisiana Supreme Court case of Gedward [v. Sonnier, 98-1688 (La.3/2/99); 728 So.2d 1265] the Court found that the child resided with the father, whom the child was visiting at the time of the accident, even though the mother was the domiciliary parent.
In the case at bar, we have a very similar situation, bolstered by the fact that the joint custody decree signed by both parents states the responsibility for the acts of the minor children shall be borne by the parent in custody at the time of the applicable act or acts. It would seem to indicate that the parent's [sic] intent was that whoever [sic] the child was residing with at the time would be responsible for the actions. For these reasons, the Court finds that the child was residing with the mother for purposes of tort liability in this instance.
As the trial court concluded, there is no dispute regarding which parent had physical custody of Brian at the time of the incident. Brian was visiting his mother. The joint custody plan filed on July 18, 1989, in connection with the divorce of Brian's parents provided for the physical *856 custody of the children of the marriage between the Sellers. The 1989 joint custody plan was modified on March 6, 1998, to provide that Mr. Sellers was to be the domiciliary parent of Brian with Ms. Sellers having visitation rights. In all other respects the provisions of the 1989 joint custody plan remained intact.
"[S]ummary judgment is apropos when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts." Hardge v. Dubosq, 00-1721, p. 2 (La.App. 3 Cir. 4/4/01); 797 So.2d 84, 87. In reviewing the appropriateness of the trial court's judgment, we are initially concerned with the law regarding contract interpretation. The interpretive purpose is to determine the common intent of the parties. La.Civ.Code art.2045. In attempting to determine that common intent, we may not seek a different interpretation "when the words of a contract are clear and explicit and lead to no absurd consequences." La.Civ.Code art.2046. However, if words of a contract are susceptible of different meanings, we must interpret them in the manner that "best conforms to the object of the contract." La.Civ.Code art.2048. We are required to interpret a doubtful provision "in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La.Civ.Code art.2053. Additionally, where the doubt created by a contract provision cannot be removed, we must interpret that provision against the party who furnished it. La.Civ.Code art.2056.
The trial court reasoned, and we agree, that a resolution of this case depends upon the meaning of "custody" in paragraph thirteen of the Sellers' joint custody implementation plan (the Plan). The jurisprudence permits summary judgment in matters involving contractual interpretation: "When ... a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and thus summary judgment is appropriate." Brown v. Drillers, Inc., 93-1019, p. 9 (La.1/14/94); 630 So.2d 741, 749-50. As noted above, the trial court held that "custody" in paragraph thirteen meant physical, as opposed to legal, custody. It is clear by the mere title of the plan that the legal custody of the Sellers' is joint custody of their minor children. The Plan, therefore, is the parents' agreement as to where the children of the marriage will be primarily domiciled and when the non-domiciliary parent would have visitation. In paragraph one of the Plan, Ms. and Mr. Sellers determined which of the parents would have "physical custody" of the children. This was modified by a later agreement that Mr. Sellers would be Brian's domiciliary parent. Paragraph two of the Plan discusses the transfer of "custody" from one parent's household to the other. In conjunction with the transfer of custody, the transferring parent is to provide the appropriate clothing for the child transferred. We find that "custody" in this second paragraph is synonymous with physical custody.
Louisiana Revised Statutes 9:335(A)(3), which provides for the provisions of a joint custody decree and implementation order, states:
The implementation order shall allocate the legal authority and responsibility of the parents.
Parties are free to contract for any object that is lawful, possible, and determined or determinable that is not in violation of public policy. La.Civ.Code art.1971; Barrera v. Ciolino, 92-2844 (La.5/5/94); 636 *857 So.2d 218. Louisiana Revised Statutes 9:335 does not violate public policy. The statute merely allows the parents, who have been awarded joint custody of their minor children, to make the determination as to which parent, as between themselves, will be responsible to third parties for the torts committed by their minor children and under what circumstances. Apparently, the legislature enacted La.R.S. 9:335 to remedy an inequity in joint custody situations where one parent is not in physical possession or control of a minor child but, pursuant to La.Civ.Code art. 2318, would be responsible for damages that child causes to a third person. To say that the word "custody" in paragraph thirteen of the Plan means "legal custody" as opposed to "physical custody" would render the provision meaningless because Mr. Sellers and Ms. Sellers were allowed to use La. R.S. 9:335(A)(3) pursuant to their joint legal custody of Brian; thus, there would be no need to allocate responsibility based on transfer of joint legal custody.
While we agree with the trial court's interpretation of the meaning of "custody" as it appears in the Plan, we disagree with the legal conclusions which it drew from the undisputed facts.
Louisiana Civil Code Article 2318 provides, in part, as follows:
The father and the mother ... are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
(Emphasis added.)
Louisiana Revised Statutes 9:335(A)(3) does not relieve a parent of the responsibility imposed pursuant to La.Civ.Code art. 2318 to indemnify a third person for damages caused by his minor child. Rather, La.R.S. 9:335(A)(3) relates to an allocation of responsibility between the parents and does not abrogate an individual parent's responsibility to third persons.
While divorced parents may contract between themselves, this contract has the effect of law for the parties. La.Civ.Code art.1983. Such "contracts may produce effects for third parties only when provided by law." La.Civ.Code art.1985. Comment (b) to Article 1985 makes it clear that a contract binds only the parties who are privy to it. Comment (b) in part, states:
Because of the ever-increasing importance of third party-beneficiary contracts, this Article provides that contracts bind only the parties unless they have lawfully stipulated otherwise.
Thus, unless it is for the benefit of a third party and the parties to the contract have lawfully provided for such, it binds only the parties.
If the paragraph at issue had not been made part of the Plan, both parents would clearly be responsible for Brian's tortious conduct, regardless of Brian's physical location or the parents' marital status. Had Brian committed his tortious act while under the care of another person, his parents would still be responsible to the damages occasioned by the injured party. The parents would be able to seek indemnification from the person in whose care Brian had been placed. The provision in the Plan does not change the responsibility to third parties imposed by La.Civ.Code art. 2318. Rather, it simply provides a right of indemnification as between the parents.
For the foregoing reasons, the judgment of the trial court is reversed. We remand this case to the trial court for trial on the merits. Costs of this appeal are assessed to defendants-appellees, Brian Sellers, Samuel Sellers, and Yvonne Sellers.
*858 REVERSED AND REMANDED FOR TRIAL ON THE MERITS.